# Richmond

## THE HAGAN ESTATES, INC., ETC. v. NEW YORK MINING & MANUFACTURING CO., INC. & VIRGINIA COAL AND IRON CO.

March 4, 1946.

Record No. 2976.

Present, All the Justices.

The opinion states the case.

*H. E. Widener* and *M. M. Heuser*, for the appellant.

*M. M. Long* and *J. L. Camblos*, for the appellees.

Browning, J., delivered the opinion of the court.

This is a suit of a nebulous nature. It presents an effort to stabilize an alleged title to land by removing a cloud therefrom, though its prayer is for a declaratory judgment as upon an actual controversy. The zeal of the fiduciary in behalf of the trust he represents is praiseworthy but it has led him into a veritable morass. A careful scrutiny of the bill and the exhibits, made a part of it, amply justifies this statement.

Back in 1881, Patrick Hagan, a large land owner of South-western Virginia, conveyed to a man named Hyndman all his right, title and interest in and to a body of land in Wise county containing 58,917 acres. It was described as lying within the lines of certain patents, and the grantor represented that he owned certain portions in fee simple and as to other parts he owned only the coal and mineral rights, and it was affirmed that certain other parts of undetermined location and area were known to be subject to the claims of various other persons by reason of adverse possession, purchase and claims of purchase from said Hagan and claims under junior grants and other color of title, but the said deed recited that the parties thereto then supposed and believed that the said Hagan had the right to convey approximately 25,000 acres of the aforesaid larger tract; that it was a sale by the acre and not by the boundary. Any excess of acreage was to be paid for at the stated price per acre and for any shortage there was to be a corresponding abatement of the price.

Of the consideration, $5,000.00 was cash in hand paid, and the residue in four equal instalments for which a vendor's lien was retained on the land.

There was embraced in the deed a saving clause to the grantors providing that where sales had theretofore been made by them of certain parts of the land to which conveyances had not been made, such omission could be supplied. The conditions we have mentioned gave color of license to the complainant to question the identity of the paper, so that it is called alternately a "deed," "a deed or contract," and "the deed or contract to convey."

The purpose of mentioning this will presently appear. The language and expressions to which we have referred presupposed a subsequent survey to make certain the uncertain elements of the conveyance.

On the 6th of May, 1882, Edward K. Hyndman and wife conveyed to the Virginia Coal and Iron Company, Inc., the same land which Patrick Hagan and wife had conveyed to him by the deed of February, 1881. The

two deeds were described as subject to the same exceptions, to-wit: a tract of 550 acres known as "Princes Flats" and an undivided moiety in two acres known as the "Burning Spring."

The latter deed contained all of the conditions and indefiniteness found in the former deed to which we have referred.

Thus the land having been acquired by a corporation all doubts as to quantity of acreage, location and source of title were sought to be removed as far as possible, hence the survey which had been foreseen, the results of which were expressed by another deed of May 27, 1905, from Patrick Hagan and wife to the Virginia Coal and Iron Company, Inc., which aimed to set all doubts at rest.

It completely accomplished that purpose, as we shall see.

These are the preambles which we think are very expressive and make perfectly plain the intention of the parties:

"WITNESSETH: Whereas, the said parties of the first part by deed dated on the 16 day of February, 1881, which is of record in the Circuit Court Clerk's Office of Wise County, Virginia, D. B. 5, P. 384, and to which reference is here made, granted and conveyed to one E. K. Hyndman by metes and bounds a certain tract of land lying in Wise

"And Whereas, the said Hyndman thereafter· conveyed all his right, title and interest in the said lands to the said County, Virginia:

party of the second part:

"And Whereas, there were certain exceptions contained in the said deed as will more fully appear by reference thereunto:

"And Whereas, the consideration which the said Hyndman was to pay for the said land was One Dollar ($1.00) per· acre for so much of the said land as the· said Hagan then had good title to; the area thereof to be determined by a survey to be thereafter made;

"And, Whereas, a survey was thereafter made of the lands to which it was thought the said Hagan had good title to and these lands were ascertained to contain 24,882

acres in fee and 4,707 acres of minerals, aggregating 29,589 acres, for which the said Hagan was paid the sum of Twenty-Nine Thousand Five Hundred and Eighty-Nine Dollars ($29,589.00).

"Whereas, the said Hagan does not claim that he is entitled to any further payment from the said Hyndman or his vendee on account of said lands;

"And, Whereas, the said conveyance to the said Hyndman is of an indefinite character;"

Then follows the expressed purpose of the conveyance:

"Now, for the purpose of making the said conveyance more specific, and of showing more clearly what was intended to be conveyed thereby, and for the further consideration of the sum of One Dollar ($1.00) cash in hand paid by the said party of the second part to the said parties of the first part, the receipt of which is hereby acknowledged, the said parties of the first part do hereby grant, release and quit-claim unto the said party of the second part, its successors and assigns all the right, title and interest of them the said parties of the first part, or either of them, in and to the following boundaries of land all of which are situated in Wise County, Virginia, viz:"

After describing the four tracts by metes and bounds the deed contains this proviso:

"It is understood, nevertheless, that this deed does not embrace certain lands which were conveyed by the said parties of the first part to the said Hyndman by the deed first hereinabove mentioned and which were thereafter conveyed by the said Hyndman to the said party of the second part and have since been conveyed by the said party of the second part to other parties, the intention hereof being to convey, release and quit-claim unto the said party of the second part so much of the said lands originally conveyed to the said Hyndman as are still owned by the said party of the second part."

Three years before the execution of the deed just described, to-wit: on the 7th of May, 1902, the Virginia Coal and Iron Company, Inc., conveyed to the New York

Mining and Manufacturing Company, Inc., eight tracts of land comprising 957.26 acres lying along the waters of Black Creek.

This is the land which the complainant says in his bill is in controversy.

He alleges that he has recently ascertained that all of this land lies within the exterior boundaries of the Patrick Hagan lands mentioned in the Hagan deed to Hyndman and does not lie within the boundaries of the 29,589 acres mentioned in the deed of May 27, 1905. How he has become possessed of this information we are not told. It is enigmatical. The complainant does say that there was an exchange of lands between the two defendants, Virginia Coal and Iron Company and New York Mining and Manufacturing Company, and, that this is admitted by their demurrers and that this "so-called exchange, if made, is palpably and on its face a mere pretense on the part of each of the defendants to obtain color of title to the lands involved should any suit thereafter arise against them concerning title. This admission unconsciously sets up the background for the controversy between the parties here involved." Strange that an "admission" which could and did not occur until after the suit was brought is adverted to as its background.

This, of course, is an attack upon the deed from the Virginia Company to the New York Company of May 7, 1902. The complainant utterly ignores the fact that his predecessor under whom he claims, Patrick Hagan, not only never questioned the authenticity of this deed but, actually, three years later, by his deed to the Virginia Company of May 27, 1905, gave it his sanction and executed this latter deed for the express and declared purpose "of making the said conveyance (that of Feb. 16, 1881) more specific, and of showing more clearly what was intended to be conveyed thereby."

Hagan in solemn words disclaimed that he was entitled to any further payment on account of said lands from the said Hyndman, the grantee, in the original deed of 1881,

or the vendee of Hyndman, which was the Virginia Company.

We quote from the defendant's brief this very apt observation as to the effect of the last clause in the 1905 deed from Hagan and wife to the Virginia Company:

"And it (the deed) sets forth that the Virginia Company has conveyed certain lands to others and as to these Hagan has actual knowledge and as he makes no claim to any title or interest therein, he makes no release as to them, but states that it is his intention to convey, release and quit-claim so much of the lands originally conveyed as are still owned by the Virginia Company." (Matter in parenthesis supplied.)

The basis for every point we have made and every issue we have discussed is the bill, itself, and the exhibits which are as much a part of it as though they were written in it.

Thus the demurrers of the defendants put in issue the whole scheme and the learned chancellor found no difficulty in sustaining them, arriving, as he did, at the sound conclusion that the complainant, on his own showing, did not have a leg to stand on.

We stated above that it would appear later why the question of the identity of the conveyance of 1881 was raised. The complainant urged that it was not strictly a deed, though, among other things, he called it one. Hagan and his wife executed it as a deed and referred to it thereafter, in other conveyances, as a deed, and in very truth it was one. It possessed all of the accepted elements of a deed and the court was right in so holding.

It will be noted that Hagan and wife conveyed to Hyndman all of their right, title and interest in the entire tract of 58,917 acres; thereafter Hyndman conveyed all that he had acquired from Hagan to the Virginia Company; subsequently the Virginia Company conveyed the eight tracts on Black Creek to the New York Company, which was in 1902; three years thereafter Hagan, to make assurance doubly sure, made a deed to the Virginia Com-

pany pursuant to the heralded survey, in which he acknowl-edges he has no further claim for payment on account of the lands and affirms that the Virginia Company has there-fore conveyed some of these lands to others, the New York Company being one.

Now what further interest in the original tracts did Hagan have? He had parted with all that he had and the only way he could have had any other concern in it of title, or possession, or ownership, would have to be derived from Hyndman or through him or adversely to him, and none of this is alleged or claimed.

█ It is almost too elemental to say, If A conveys in fee to B all his right, title and interest in Blackacre, that is the end of A's interest. Any other interest flowing to A must be through or against B.

One of the grounds of the demurrer was that the com-plainant and his predecessors in title had been guilty of laches and that the asserted claim had been long since barred by the statute of limitations.

Sixty-two years had elapsed from the date of the deed of 1881 to the filing of this suit in 1943; sixty-one years from the date of Hyndman's deed to the Virginia Company; forty-one years from the date of the Virginia Company's deed to the New York Company, and thirty-eight years from the date of Hagan's deed of quit-claim and release to the Virginia Company.

Through all of this period there was no objection by Mr. Hagan or any other person to anything that was done or any step that was taken. He was cognizant of it all and aided in its consummation.

After the death of Patrick Hagan, this suit was insti-tuted.

█ █ There can be no serious question of the appli-cability of the doctrine of laches and its availability as a defense is as present in equity as it is in law.

In the case of *Camp Mfg. Co. v. Green*, 129 Va. 360, 367, 106 S. E. 394, this is said:

█ "It is said in *Cole v. Ballard*, 78 Va. 139, 149, that

'no principle is better established, or more uniformly acted on in courts of equity, than that, in respect to the statute of limitations, equity follows the law—that is to say, if a legal demand be asserted in equity, which at law is barred by statute, it is equally barred in a court of equity; and if not barred by statute law, neither is it barred in equity; and relying upon this doctrine, the claim is made that because the deed from George W. Green, Executor, is void and there has been no adverse possession of the property, the legal title of the complainants is perfect, and the defense of laches cannot be invoked to defeat such a title. In this case, however, the complainants themselves show by their bill that this is not a mere suit for partition, in which the rights of the parties are clear, but the bill itself shows adverse claims under deeds running through a period of over fifty years, alleges that these conveyances constitute a cloud upon the title, and prays that the rights of all the parties may be adjudicated. This we think sufficient to take the case out of the general rule just alluded to. There is no other controversy in this case, except that which arises out of these deeds and the adverse claims thereunder. The complainants have sought the relief which only a court of equity could give—that is, the removal of the alleged cloud upon their title created only by these conveyances and the consequential adverse claims thereunder. Hence, equitable doctrines should control the disposition of the case.

"The underlying reason for the doctrine of laches is that because of the lapse of time and the death of parties, it is impossible to ascertain all the facts, and therefore it is just to leave the parties in the position in which they have placed themselves.

"In the case of *Akins* v. *Hill*, 7 Ga. 573, 577, it is cited: 'Equity will not aid in the enforcement of stale demands. Although statutes of limitations are obligatory in equity as well as at law, yet there are cases where that court will make time a bar, although not strictly pleadable as a limitation. * * * * The peace of society requires that there

should be limits put to litigation. The justice and sense of civilized communities have ever favored limitation laws. There is no principle of equity sounder, more conservative and more prolific in all the fruits of peace than this: That he who slumbers over his rights, with no impediment to his asserting them, until the evidence upon which a counter-claim is founded, may, from lapse of time, be presumed to be lost; until the generation cognizant of the transactions between the parties has passed away, and until original actors are in their graves, and their affairs left to representatives—the law, in the exercise of an equitable sovereignty, presumes it to be unjust that under such circumstances a complainant should be heard; and in nine cases out of ten it is unjust in fact, as well as in theory. It is presumed, and the presumption grows out of the principles of human nature, developed in universal experience, that men will use reasonable diligence to get what originally belongs to them.' "

In the recent case of *Pretlow* v. *Pretlow*, 177 Va. 524, 14 S. E. (2d) 381, this court said through Mr. Justice Holt: ██ " 'Prejudicial delay must be shown before the defense can be successfully maintained. Laches, in legal significance, is delay that works a disadvantage to another.' " *National Valley Bank* v. *United States Fidelity, etc., Co.*, 153 Va. 484, 150 S. E. 403.

Surely the unconscionable delay here has worked a great disadvantage to the defendants.

In the face of the facts of this case as shown by the complainant's pleadings, it is no hazard to say that Patrick Hagan would not have countenanced this suit.

He is dead, who knew more about it than any one else. While he lived he never opened his mouth in derogation of the transactions in which he took the major part. All of the actors in this drama are doubtless gone.

Impressive is the language of the defendant's counsel which we quote:

* * * * "Complainant has brought his suit, addressed to the conscience of the Chancellor, complaining of a wrong

done him which cannot adequately be remedied at law. We say that his complaint, taken at its face value, is so late, so stale, and so much of shadow and so little of substance, that the conscience of the Chancellor should not be aroused in complainant's behalf."

The trial court held that the deed of 1881, from Patrick Hagan and wife, conveyed to E. K. Hyndman the entire tract of 58,917 acres, as described therein, subject to the two reservations designated, and that thereafter Hagan had no title to any part of said tract, and that the Virginia Coal and Iron Company having conveyed the eight tracts on Black Creek to the New York Mining and Manufacturing Company by deed May 7, 1902, the latter took good title as against Hagan and that the said Hagan having no title thereto on the date of said conveyance and not showing any title through the New York Company, the plaintiff does not now have title thereto.

It further held that the plaintiff and its predecessors in title were guilty of laches barring their recovery and it sustained each of the demurrers. The complaint did not avail itself of the right to amend its bill which was given it by the decree. The decree of the court is plainly right and it is affirmed.

*Affirmed.*