FRANCES D. HANSON

v.

VIRGINIA D. HARDING, ET AL.

Record No. 921103

April 16, 1993

Present: All the Justices

*J. Forester Taylor* for appellant.
*Richard F. McPherson (Nelson, McPherson, Summers & Santos,* on brief), for appellees.

JUSTICE LACY delivered the opinion of the Court.

In this appeal, we consider whether the parties challenging a deed produced sufficient evidence to invalidate the instrument based on fraud in its procurement or on a failure of delivery.

On August 22, 1989, Floyd M. Diehl, a widower, signed a deed of gift conveying his residence and property to one of his daughters, Frances D. Hanson. At the time he executed the deed, Diehl was 94 years old and had been a patient in a nursing home for approximately two months. Hanson did not record the deed until after her father's death on May 6, 1990. Diehl died intestate.

Diehl had three other surviving children — Virginia D. Harding, Luther W. Diehl, and Pauline D. Burchill. These children, along with Wanda D. Caldwell and Yvonne D. Young, the children of a son who predeceased Diehl (collectively "contestants"), filed a bill of complaint to set aside the deed to Hanson, alleging that Hanson procured the deed by fraud and that there had been no valid delivery of the deed. The trial court referred the matter to a commissioner in chancery who, following a hearing, held that the deed was invalid. The trial court overruled Hanson's exceptions to the commissioner's report and entered a decree adopting the report and declaring the deed null and void because it was "obtained by fraud" and was not

"properly delivered as required by law." We awarded Hanson an appeal.

To prevail in their claim of fraud in the procurement of the deed, the contestants had the burden of proving the fraud by clear and convincing evidence. *Winn* v. *Aleda Constr. Co.*, 227 Va. 304, 308, 315 S.E.2d 193, 195 (1984). A familial relationship between the grantor and grantee may give rise to a presumption that shifts the burden of going forward with the evidence to the deed's proponent. To invoke this presumption, however, the evidence must show that a confidential or fiduciary relationship existed between the grantor and the deed's proponent, that the consideration was grossly inadequate, and that the grantor suffered from "great weakness of mind." *Martin* v. *Phillips*, 235 Va. 523, 528-29, 369 S.E.2d 397, 400 (1988); *Nuckols* v. *Nuckols*, 228 Va. 25, 33-34, 36-37, 320 S.E.2d 734, 738-39, 740 (1984). This presumption is not applicable here, however, because the court below held, and the contestants concede, that Diehl was reasonably intelligent, was mentally alert, and had the capacity to make and to execute the deed. Therefore, the burden of going forward with the evidence did not shift to Hanson.

The contestants presented 10 witnesses, and called Hanson, as an adverse witness. The contestants identify two primary areas of testimony to support their claim of fraud. First, they cite the testimony that Diehl frequently told friends and relatives that he loved all his children and wanted to leave his property to all of them. The witnesses also testified that he repeatedly told them he intended to return home when he was able to leave the nursing home. Diehl also signed a statement to that effect to allow continued Medicare coverage. Finally, Diehl did not tell any of the witnesses that he had conveyed the property to Hanson. These statements and actions, the contestants assert, are inconsistent with Diehl's executing a deed giving the property to only one of his children.

Second, the contestants point to the circumstances surrounding the deed's execution as support for their fraud claim. The deed was drawn by Hanson's attorney at her request because, Hanson testified, her father wanted the property to go to the "one who took care of him." Hanson assumed that she was that person. Only Hanson, her husband, and a notary were present when Diehl executed the deed. The notary, Janet C. Dixon, was also the director of admissions of the nursing home. She testified that she was well-acquainted with Diehl and knew him to be alert and aware of what was going on. Dixon did not know the nature of the document she

was notarizing, but she testified that she asked Diehl if he understood what he was signing and he responded that he did. Later, in September, Diehl told two of the witnesses that he refused to sign a paper that Hanson gave him about hauling trash out of his basement. Finally, Hanson did not tell anyone of the deed and did not record it until after Diehl's death; she testified that she would not consider the property hers until her father died and that she would have returned the deed to him if he had asked for it.

■ Hanson argues that as a matter of law this evidence does not clearly and convincingly show fraud in the procurement of the deed. We agree. Diehl was mentally alert and said that he knew what he was signing. Neither the evidence of Diehl's refusal to sign a document regarding hauling away trash nor any other evidence in the record shows that Hanson misled her father as to the nature of the document he signed. The apparent inconsistency between Diehl's stated intention regarding the disposition of his property on his death and the deed of gift to Hanson is insufficient, when considered alone or with the rest of the record, to establish fraud by clear and convincing evidence. Consequently, the contestants failed to meet their burden of proof, and the trial court clearly erred in invalidating the deed on this basis.

The contestants next claim that the deed was not valid because there was no delivery. They assert that there was neither an intention by the grantor to pass present title nor an intention on the part of the grantee to receive present title. The contestants rely on the testimony of Diehl's repeated statements that he intended to return to his home when able and intended that the house go to all his children upon his death, as well as on Hanson's testimony that she did not consider it her property until her father died.

■ The contestants correctly assert that the mere manual transfer of a deed from a grantor to a grantee is not always conclusive evidence of legal delivery. The grantor's intent makes the delivery operative. *Capozzella* v. *Capozzella*, 213 Va. 820, 823, 196 S.E.2d 67, 70 (1973). Nevertheless, if the grantee is in possession of a deed which has been properly executed, a presumption arises that the deed was duly delivered and the burden of proof rests on the party disputing the delivery. *Enright* v. *Bannister*, 195 Va. 76, 80, 77 S.E.2d 377, 380 (1953).

■ Diehl's statements regarding his desire to return to his home and Hanson's testimony that she did not believe that she would own the property until her father died are consistent with the creation of

a life estate in favor of Diehl. Such intentions are not inconsistent with Diehl's intention to pass present fee simple title and could form the basis for reforming rather than invalidating the deed. *Malbon* v. *Davis*, 185 Va. 748, 757, 40 S.E.2d 183, 188 (1946). And Hanson's testimony that she "would have returned" the deed to her father if he had asked for it reflects an understanding that ownership had passed to her and does not negate Diehl's intention to convey Hanson the property or overcome the presumption of delivery. Finally, the statements attributed to Diehl regarding his desire that the property be shared by all the children at his death, made after the deed's execution and delivery to Hanson, do not show that Diehl did not intend that title pass at the time he executed the deed. These statements, without more, are insufficient to overcome the presumption of delivery arising from the grantee's possession of a duly executed deed.

■ We find that the contestants failed to produce sufficient evidence to overcome the presumption that the deed was delivered in accordance with the law, and that the trial court clearly erred in invalidating the deed on this claim. In light of these findings we need not consider Hanson's other assignment of error.

Accordingly, we will reverse and vacate the decree of the trial court and dismiss the bill of complaint.

*Reversed and dismissed.*