Present:  All the Justices

CLAUDE A. AYERS, ET AL.

OPINION BY JUSTICE A. CHRISTIAN COMPTON

v.  Record No. 972356                    September 18, 1998

GARLAND E. MOSBY


FROM THE CIRCUIT COURT OF HENRICO COUNTY
George F. Tidey, Judge

In this chancery suit, there is an effort to rescind a deed upon the grounds of mutual mistake of fact or coercion.  On appeal, we consider whether the chancellor erred in sustaining defendant's motion to strike the evidence following presentation of the plaintiffs' case-in-chief during an ore tenus hearing.

The facts are virtually undisputed; the controversy is over the inferences to be drawn from the facts.  The chronology is important, as is the identity of the players in this narrative.

The ownership of residential property located in Henrico County is at issue.  Warner M. Mosby and Mary M. Mosby, his wife, had acquired the property in 1968 and resided there.

In 1990, the Mosbys executed mutual wills.  Each will devised the property "in equal shares" to William Wray Matthews and appellee Garland Eugeen Mosby, if they survived the testators.  Matthews is Mary Mosby's son and has suffered from many health problems all his life.  Mosby, the defendant below, is her stepson.  The wills nominated defendant as executor.

Warner Mosby died in November 1994 and fee simple title to the property vested in his widow. In January 1995, the widow executed the instrument in question. By "Deed of Gift," she conveyed the property in fee simple to defendant.

In September 1995, Mary Mosby executed another will. She purported to devise a life estate in the property to her son, if he survived her, with remainder to Sidney Alvis Matthews, her brother, and his wife. She nominated her brother as executor of this will.

In August 1996, Mary Mosby executed yet another will. She purported to devise the property "fifty percent . . . in fee simple absolute" to her son and "the remaining fifty percent . . . in equal shares and in fee simple absolute" to appellants Claude A. Ayers, Jr., and Rebecca P. Ayers. She nominated the Ayerses, who were her neighbors, as executors of this will.

In October 1996, Mary Mosby died at age 73. The Ayerses qualified as executors of the decedent's estate, and filed the present suit in their representative capacity against defendant.

In a bill of complaint, the plaintiffs alleged decedent "discovered" prior to her death "that a Deed of Gift bearing her signature," and "ostensibly" conveying the fee simple interest in her property to defendant, had been recorded. They asserted that the alleged conveyance "was the result of the Defendant's coercion" and that the deed was executed "by mistake." The

2

plaintiffs sought rescission of the deed, reconveyance of the property, attorney's fees, and costs. Answering the bill of complaint, defendant filed a general denial that plaintiffs were entitled to the relief sought.

Following discovery, the ore tenus hearing was held in May 1997, at which the plaintiffs' case-in-chief consisted of testimony by an attorney who drew the decedent's second will and by decedent's brother. The plaintiffs also presented defendant's answers to interrogatories, defendant's responses to requests for admissions, and excerpts from defendant's March 1997 discovery deposition.

At the conclusion of this evidence, the chancellor sustained defendant's motion to strike. The court ruled plaintiffs failed to establish by clear and convincing evidence they were entitled to rescission of the deed. We awarded plaintiffs an appeal from the August 1997 final decree dismissing the bill of complaint.

Summarized in the light most favorable to the plaintiffs, their evidence showed that during Warner Mosby's 1994 "final illness," when he was hospitalized in the Richmond area, a question arose whether he could remain in the hospital for necessary treatment because the federal Medicare program would no longer fund the hospitalization. "[F]earing the worst," a hospital administrator "arranged a meeting between Mary Mosby

3

and a social worker to discuss the pros and cons of [a] nursing home alternative."  The decedent asked defendant to attend the meeting.

Upon defendant's arrival at the hospital from his Urbanna home, decedent advised him she already had met with the social worker.  The decedent had learned, according to the evidence, that the Medicare program would fund only a small portion of nursing home charges and that a patient could become eligible for substantial funding under the federal Medicaid program only after the patient's assets had been "exhausted."

The decedent then asked defendant "to transfer the house," which "was her single largest asset," and a certificate of deposit to his "name" so that defendant could "look out for her needs in the event she should be confined to a nursing home later in life."  Defendant, a partner in a firm "which manages medical practices," advised decedent, who was in "bad health," to arrange for her son, William Matthews, to "move in with her" to reduce the living expenses of both.

The week following Warner Mosby's funeral, defendant had the deed of gift drawn by a Saluda attorney.  During the first week of January 1995, defendant accompanied the decedent to a Richmond-area bank.  There, the certificate of deposit was transferred to defendant and the deed that decedent had executed

4

was acknowledged before a notary public.  On February 7, 1995, defendant recorded the deed.

Defendant's "understanding of the transfer that took place" was that he "was care taker of those assets to take care [of] Mary, and once she was gone that I would divide those equally with Billy," decedent's son.  Defendant stated he would decide at decedent's death "what to do with the property" by referring to the 1990 mutual will.

The decedent continued to live in the home on the property. Her brother, a North Carolina resident, furnished her with financial advice.  Even though defendant was executor of his father's estate, the decedent "kept herself busy attending to the settlement of [Warner Mosby's] affairs," advising defendant frequently "as to where things stood."

In July 1995, decedent had a "heat stroke," followed later by "ministrokes," which caused her to be "confused" at times. In September 1995, the brother accompanied the decedent to the office of an attorney to draw a will that omitted defendant as a beneficiary.  When asked why she was "deleting" defendant from her will, she told her brother that defendant "doesn't do a damn thing for me . . . I can't get him on the phone."  Other evidence offered by the plaintiffs showed decedent told defendant during the Fall of 1995 that "you don't have to visit

me. You have your mother in the nursing home, you live in Urbanna now."

Following execution of this second will, decedent asked her brother to "look through my papers" to determine if they "are in order." Among the documents, the brother found the deed in question. According to the brother, "I asked her when did she give away her house. She said, I haven't given away my house. I said, well, this paper here says you have. I said, that would make all these Wills void and null." The brother notified the attorney who had drawn the second will of discovery of the deed.

In January 1996, the attorney prepared and filed a bill of complaint styled "Mary M. Mosby vs. Garland E. Mosby" alleging fraud, misrepresentation, failure of consideration, and unjust enrichment. The subpoena in chancery never was served. Counsel testified that during discussions with his client, she "confirmed" the signature on the deed was hers, although "she never remembered signing the deed," and told him she "never had any intention of transferring her property."

In awarding this appeal, the Court framed the issue to be debated. It is whether the trial court erred in finding plaintiffs failed to present clear and convincing evidence that decedent signed the deed as the result of mutual mistake of fact or coercion. Arguing the affirmative, plaintiffs contend the "heart" of their appeal is that the evidence clearly established

6

decedent did not intend to transfer fee simple ownership of the property to defendant.  Plaintiffs point out that "at every significant point in the course of this lawsuit, the Defendant himself admits that he was not the fee simple owner of the Property and that it was not his stepmother's intent to transfer fee simple ownership of her home."

Elaborating, plaintiffs say their allegation of mistake was established by the following evidence:  The deed was prepared by defendant's attorney; the decedent never had possession of the deed until after defendant recorded it; the decedent continued to pay the home mortgage, real estate taxes, and insurance on the property; the decedent remained in possession of the property; she continued to devise the property as part of her estate planning; and decedent, upon learning of the deed's existence, not only denied "giving" the property to defendant, but also filed suit during her lifetime to have the deed rescinded.  This evidence, coupled with defendant's testimony that he was only a "care taker" of the property, shows, according to plaintiffs, there was no present intent when the deed was executed to transfer fee simple ownership to defendant. They say:  "The deed of gift, by Defendant's own sworn testimony, therefore, contains a mistake."

In support of their charge that defendant coerced decedent to sign the deed, plaintiffs argue defendant acted in a

fiduciary capacity to his stepmother. Thus, according to plaintiffs, the very nature of the transaction furnishes the most satisfactory proof of "fraud" and outweighs evidence to the contrary. Plaintiffs exclaim: "It simply defies rational explanation that the Decedent would convey her single largest asset solely to a step-son and not provide at all for her own natural son, especially when the decedent's estate planning evidenced a consistent intent to provide for her natural son."

We reject plaintiffs' contentions. In order to withstand a motion to strike, the plaintiffs had the burden of establishing prima facie by clear and convincing evidence that the decedent executed the deed as a result of mutual mistake of fact or coercion. See Langman v. Alumni Ass'n of the Univ. of Virginia, 247 Va. 491, 502-04, 442 S.E.2d 669, 676-77 (1994); Carter v. Carter, 223 Va. 505, 509, 291 S.E.2d 218, 221 (1982).

As pertinent here, the rule is that a trial court under its equitable jurisdiction may give relief on the ground of mistake in connection with a written instrument if "there has been an innocent omission or insertion of a material stipulation, contrary to the intention of both parties, and under a mutual mistake." Wilkinson v. Dorsey, 112 Va. 859, 869, 72 S.E. 676, 680 (1911).

In the present case, there has been no mutual mistake warranting rescission of the deed. To carry out her plan to

8

dispose of her assets in order to qualify for Medicaid funding, the decedent intentionally transferred the fee simple interest in her real property to defendant so that he could "take care" of her. There was no mistake on her part; she accomplished just what she intended, that is, to liquidate her assets but have them remain available for support during her life. The defendant took delivery of the deed and recorded it, acting upon his understanding that he would be "care taker" of the property. There was no mistake on his part; he accomplished just what he intended, that is, to hold title to the property in trust for her life. Thus, paraphrasing Wilkinson, there was no omission or insertion, innocent or otherwise, of a material stipulation contrary to the intention of the parties under a mutual mistake.

Decedent's statements made months after the deed was executed that she did not intend to transfer fee simple ownership to defendant are belied by her execution, acknowledgement, and delivery of the instrument. In the absence of fraud, duress, or mutual mistake, a person having the capacity to understand a written instrument who reads it, or without reading it or having it read to her, signs it, is bound by her signature. Metro Realty of Tidewater, Inc. v. Woolard, 223 Va. 92, 99, 286 S.E.2d 197, 200 (1982). See Ashby v. Dumouchelle, 185 Va. 724, 733, 40 S.E.2d 493, 497 (1946). Thus, her personal representatives cannot now successfully rely on her

oral statements to nullify the deed's provisions and to support rescission of the written instrument.

Parenthetically, we note that on brief and at the bar during argument of the appeal, counsel for defendant stated that while the foregoing facts "do not support voiding of the deed," nonetheless the facts "may" be the basis for enforcement of a "trust created by parol" or the basis for otherwise reforming the deed to reflect the intent expressed in the mutual will, that is, to benefit the decedent for life, and defendant and William Matthews thereafter. See Hanson v. Harding, 245 Va. 424, 427-28, 429 S.E.2d 20, 22 (1993); Malbon v. Davis, 185 Va. 748, 757, 40 S.E.2d 183, 188 (1946). This type of relief cannot be accomplished in the present suit, however, because beneficiary William Matthews is not a party.

Finally, there is not even a hint that defendant coerced decedent into executing the deed. There is no evidence of duress or conduct by defendant that destroyed decedent's free agency. See Martin v. Phillips, 235 Va. 523, 527, 369 S.E.2d 397, 399 (1988). Under these facts, defendant did not stand in a fiduciary capacity to his stepmother. See Nuckols v. Nuckols, 228 Va. 25, 36-37, 320 S.E.2d 734, 740 (1984). Indeed, she initiated his involvement in her plan to assure eligibility for Medicaid funding and cooperated with its fulfillment by voluntarily accompanying him for the signing and acknowledgement

of the deed.  These events transpired when decedent had the capacity to understand the instrument and before she began having a series of strokes, which commenced six months after she executed the deed, rendering her "confused" at times.

Consequently, we hold the chancellor did not err in sustaining defendant's motion to strike the plaintiffs' evidence and in entering summary judgment for the defendant.  Thus, the final decree dismissing the bill of complaint will be

<u>Affirmed</u>.