# CIRCUIT COURT OF THE CITY OF ROANOKE

Fletcher D. Pleasant
and Doris H. Jones

v.

Addie Haynes,
Executrix
of the Estate of
Kathleen Farmer Kelly

April 25, 2006

Case No. CH04-248

BY JUDGE CHARLES N. DORSEY

This case concerns the proper beneficiaries of two accounts of Kathleen Farmer Kelly, both of which were with the Eli Lilly Federal Credit Union (the "bank"), and were distributed after she died on April 5, 2003. The question is whether the distribution of these funds was made properly.

The first account, a 401(k) worth approximately $260,000.00, was distributed to Kelly's brother, Harry Farmer, by Eli Lilly according to a third-party beneficiary designation. Farmer died shortly after Kelly, and the funds were further distributed to his testamentary beneficiaries, who are also the plaintiffs.

The second account consisted of $67,417.30 kept in a P.O.D. (payable on death) account during Kelly's life. Farmer was the initial third-party beneficiary of this account. Shortly before Kelly died, she instructed the bank to close the P.O.D. account and issue her a check. The bank complied a few days after Kelly's death and Addie Haynes, executrix of Kelly's estate, negotiated the

check to the estate and later distributed the funds to herself as Kelly's testamentary beneficiary.

One year later, the executor of Harry Farmer's estate, and other beneficiaries, filed a four-count bill of complaint seeking to recover the $67,417.30 from the P.O.D. account from Haynes. After some pretrial litigation, the plaintiffs now seek recovery only on a theory of conversion, claiming the check was not issued until after Kelly's death, and the P.O.D. provision should have operated to disburse the funds to Harry Farmer as the third-party beneficiary.

In response, Haynes filed a "counterclaim" against the plaintiffs requesting the Court use its powers of equity to transfer the funds from the 401(k) to her. This "counterclaim" seeks a remedy without stating a cause of action. Haynes argues that Kelly attempted to change the beneficiary of the 401(k) before she died, although the form she filled out was designed to only change the beneficiary of a separate retirement death benefit.

Evidence was taken at a bench trial on February 21, 2006, and written arguments and authorities were submitted. Only two issues are now before the Court: (1) Did Addie Haynes convert the check issued by Eli Lilly; and (2) Should the 401(k) contract between Kelly and Eli Lilly be reformed to give effect to the alleged third-party beneficiary modification?

For the following reasons, the answer to both of these questions is "no."

## I. Plaintiffs' Conversion Claim

Va. Code § 8.3A-420 governs actions for conversion of negotiable instruments. *See also* U.C.C. § 3-420 (1977). It applies the common law action for conversion of personal property to negotiable instruments, which includes drafts, commonly known as "checks." The Supreme Court of Virginia has defined conversion as "any wrongful exercise or assumption of authority, personally or by procurement, over another's goods, depriving him of their possession." *Buckeye Nat'l Bank v. Huff & Cook*, 114 Va. 1, 11, 75 S.E. 769 (1912).

In making out their conversion claim, the plaintiffs contend that (1) the relationship between Kelly and the bank was that of principal and agent; (2) the death of a principal terminates the authority of the agent; (3) the bank did not have the authority to close the P.O.D. account and issue the check because it failed to do so before Kelly died; and, therefore (4) Haynes' negotiation of the check amounted to a conversion of the property of Farmer's estate. *See* Pl.'s Tr. Brief at 1-3.

The defendant counters, however, that the relationship between Kelly and Eli Lilly was one of creditor and debtor, not principal and agent, and as such, the bank had the contractual obligation to close the account and issue a check to Kelly in that amount upon her verbal instruction. *See New York County Nat'l Bank v. Massey*, 192 U.S. 138, 145, 24 S. Ct. 199, 48 L. Ed. 380 (1908) ("[A] deposit of money upon general account with a bank creates the relation of debtor and creditor.").

This is not a case of conversion at all. Confirming the defendant's view, the Supreme Court of Virginia has said:

> The relationship that exists between a bank and its depositor is that of debtor and creditor. A bank's contractual duty is discharged when it securely keeps the money and pays the check or order of the depositor when properly presented. It has no right to willfully or arbitrarily refuse to honor the demand of the depositor, and if it does so, it will be liable for resultant damages.

*Cocke's Adm'r v. L. L. Loyall*, 150 Va. 336, 341, 143 S.E. 881 (1928).

Additionally, Va. Code § 6.1-125.3 clarifies that a "P.O.D. account belongs to the original payee during his lifetime and not to the P.O.D. payee or payees."

Addie Haynes testified, with corroboration, that Kelly verbally directed an agent of the bank to close the P.O.D. account and issue those funds to Kelly. Trial Tr. at 6-7, 28; Pl.'s Ex. 1. Jeff Wilson, a financial planner who corroborated Haynes' testimony, had no stake in the funds. Virginia Code § 8.01-397, the "Dead Man's Statute", arguably required corroboration. There is no evidence that the P.O.D. account contract required written authorization to close the account. Once Kelly made the verbal instruction to the bank, the P.O.D. account ceased to exist. It is legally insignificant that the bank took a few extra days to actually issue a check for those funds.

Furthermore, this is not the case of a gift, *inter vivos* or *causa mortis*, at all, as the plaintiffs contend. The check that Kelly sought from the bank to close the P.O.D. account was payable to her. Once she died, Addie Haynes, wearing hats both as executrix and sole testamentary beneficiary, properly negotiated the check to Kelly's estate, issued a check from the estate account as executrix to herself as sole beneficiary, and negotiated that check as the beneficiary-payee. The funds passed under Kelly's will, and not by gift.

Thus, Haynes could not have converted the check because the P.O.D. account was Kelly's property, was closed before the P.O.D. provisions could operate, and the resulting funds passed under her will to Haynes. Because the plaintiffs have not shown that Haynes wrongfully exercised or assumed authority over property to which they had a superior right or interest, the evidence on the conversion claim is stricken and judgment is entered in favor of the defendant.

## II. *Defendant's "Counterclaim"*
## *for Reformation of the 401(k) Contract*

The defendant asserts that there was a "mutual mistake" between Kelly and Eli Lilly when she attempted to change the beneficiary of the 401(k) to Haynes but actually filled out a form to change beneficiary for a separate death benefit of $5,000.00. The defendant also claims that Kelly "substantially complied," in her effort to change the 401(k) beneficiary and equity should transfer the money to Haynes.

Reformation is never alleged in the "counterclaim" (actually a "cross-bill," since the suit was brought in equity, before this year's consolidation of the pleading of causes of action). Nonetheless, the defendant asks the Court to reach deeply into its equitable powers and reform the contract to reflect Kelly's intent, though she has passed away. Though the defendant has failed to actually allege a "cause of action," she clearly seeks reformation of the 401(k) contract based on a mutual mistake of fact. *See* Def.'s Tr. Brief at 10-11. Based on Va. Code § 8.01-275 (2006), the claim will not abate for want of form.

"When an agreement is made and reduced to writing, but, through mistake [or] inadvertence, the writing fails to express correctly the contract really made," this Court, sitting in equity, may "reform the instrument in conformity with the real intention of the parties." *Beach v. Bellwood*, 104 Va. 170, 184, 51 S.E. 184 (1905). *See also Ayers v. Mosby*, 256 Va. 228, 504 S.E.2d 845 (1998); *Knewstep v. Jackson*, 259 Va. 263, 523 S.E.2d 505 (2000). Reformation of the written instrument may be accomplished if "there has been an innocent omission . . . contrary to the intention of both parties, and under a mutual mistake." *Ayers*, 256 Va. at 234 (quoting *Wilkinson v. Dorsey*, 112 Va. 859, 869, 72 S.E. 676 (1911)) (internal quotations omitted). Clear and convincing evidence is required to obtain reformation because of a mutual mistake of fact, and "it is the province of the trial court to assess the credibility of witnesses and the probative value to be given their testimony." *Knewstep*, 259 Va. at 269; *Ayers*, 256 Va. at 233; *see also Langman v. Alumni Ass'n of the Univ. of Va.*, 247 Va. 491, 502-04, 442 S.E.2d 669 (1994); *Claude v. Carter*, 223 Va. 505, 509, 291 S.E.2d 218 (1982).

The plaintiffs raised an objection at trial, which was taken under advisement, that evidence should not even be taken on this question, before getting to the question of reformation because it is inadmissible parol evidence. "Evidence of prior or contemporaneous oral negotiations or stipulations" to a contract is parol evidence, and it "is inadmissible to vary, contradict, add to, or explain the terms of a complete, unambiguous, unconditional written instrument." *Shevel's, Inc. – Chesterfield v. S.E. Assocs., Inc.*, 228 Va. 175, 182, 320 S.E.2d 339 (1984) (citing *Amos v. Coffey*, 228 Va. 88, 320 S.E.2d 335 (1984); *McComb v. McComb*, 226 Va. 271, 307 S.E.2d 877 (1983)). An exception exists in the case of a mistake in integration, but "the only limitation on this doctrine is that the evidence in all such cases *must be very strong and clear, such as to leave no fair and reasonable doubt upon the mind*, that the writing does not correctly embody the intention of the parties." *Beach*, 104 Va. at 184 (quoting *Mauzy v. Sellars*, 67 Va. (26 Gratt.) 641, 647 (1875)) (emphasis added).

Here, it is clear that Kelly executed a document with the words "Death Benefit" at the top. Trial Tr. at 10, 36; Def.'s Exs. B, C, D. What is not clear – especially as to leave no fair and reasonable doubt – is whether she actually intended to change the beneficiary of the 401(k), and not the retirement benefit. No evidence has been submitted suggesting that Kelly was of unsound mind or misunderstood what form she was executing. The form clearly said "Death Benefit" and said nothing relating to a 401(k) retirement account. She possibly may have said that she wanted to change the 401(k), but did not actually mean to do it. She may have originally wanted to change the 401(k) beneficiary, but when the wrong form was presented her, she decided that she did not want to do that after all. It is unknown exactly what Kelly intended, and will remain unknown, as she has died. Parol evidence is not admissible on the question of reformation because it is not clear that Kelly intended to change the 401(k) rather than the retirement benefit.

Even if parol evidence were admissible, it is neither clear nor convincing that Kelly was mistaken, for many of the same reasons that parol evidence should not be allowed in the first place. Kelly may very well have changed her mind when presented with the form, or she may have said one thing, and meant another. Because her intent has not been proved clearly and convincingly, reformation is denied.

Finally, even if parol evidence and reformation were allowed, the doctrine of laches would bar enforcement of that right. The doctrine of laches is based on the premise that "equity will not aid in the enforcement of stale demands." *The Hagan Estates, Inc. v. New York Mining & Mfg. Co.*, 184 Va.

1064, 1073, 37 S.E.2d 75 (1946). The Supreme Court of Virginia has said that "the underlying reason for the doctrine of laches is that, because of the lapse of time and the death of parties, it is impossible to ascertain all the facts, and, therefore, it is just to leave the parties in the position in which they have placed themselves," which is exactly what happened here. *Id.* (quoting *Camp Mfg. Co. v. Green*, 129 Va. 360, 367, 106 S.E. 394 (1921)).

Notably, the Supreme Court has said:

> There is no principle of equity sounder, more conservative and more prolific in all the fruits of peace than this: That he who slumbers over his rights, with no impediment to his asserting them, until the evidence upon which a counterclaim is founded, may, from lapse of time, be presumed to be lost; until the generation cognizant of the transactions between the parties has passed away, and until original actors are in their graves, and their affairs left to the representatives – the law, in the exercise of an equitable sovereignty, presumes it to be unjust that, under such circumstances, a complainant should be heard; and, in nine cases out of ten, it is unjust in fact, as well as in theory. It is presumed and presumption grows out of the principles of human nature, developed in universal experience, that men will use reasonable diligence to get what originally belongs to them.

*Id.* at 368-69 (quoting *Akins v. Hill*, 7 Ga. 573, 577 (1849)).

Addie Haynes was not reasonably diligent, and "slumbered" on her rights, without impediment. Haynes kept the $5,000.00 death benefit, never contacted Farmer about the $260,000.00 that was disbursed to him, and only brought a "counterclaim" after she was sued over the P.O.D. account funds. Haynes testified at the trial that her attorney told her to not contact Farmer and that her only remedy was against Eli Lilly. Trial Tr. at 22-23. Even if she were given questionable legal advice, she did not seek another opinion, and never took any action. Haynes did not act with reasonable diligence, and "equity aids only the vigilant." *Puckett v. Jessee*, 195 Va. 919, 930, 81 S.E.2d 425 (1954).

Furthermore, granting this relief would work an inequity against the plaintiffs. Fletcher Pleasant testified at the trial that he had no idea there were any claims against the money. In that vein, Farmer and the plaintiffs spent the money. To now go back and grant equitable relief to Haynes, after she did nothing to assert her rights, would be unjust to the plaintiffs. Haynes abandoned

402

her rights, and regardless of the reformation, she should not recover because of her lack of diligence on that claim.

Finally, the defendant also seeks reformation of the 401(k) contract on a theory of substantial compliance, that Kelly "substantially complied" in her attempt to change the beneficiary. There is no basis for this in Virginia law, as substantial compliance refers not to reformation in contract law, but to contract cases where conditions have substantially, though not literally, been met by one party and requiring the other party to fulfill his or her end of the bargain. *Akers v. James T. Barnes, Inc.*, 227 Va. 367, 371, 315 S.E.2d 199 (1984) (providing that "substantial compliance . . . means that although the conditions of the contract have been *deviated from in trifling particulars not materially detracting from the benefit the other party would derive from a literal performance*, he has received substantially the benefit he expected, and is, therefore, bound to pay"). There is no separate contract here, independent of the 401(k), to which this theory applies. The evidence on defendant's reformation cross-claim is stricken and judgment is entered in favor of the plaintiffs.