# CIRCUIT COURT OF FAIRFAX COUNTY

Best Medical
International, Inc., et al.

v.

Wells Fargo, Inc., N.A.

Case No. CL-2010-10997,
consolidated with Case No. CL-2010-9395
and Case No. CL-2010-9414

By Judge Lorraine Nordlund

April 27, 2011

This matter came before the Court on the Defendants' Demurrer and Plea in Bar to Plaintiff's Second Amended Complaint. The Court heard argument on Wednesday, March 2, 2011, and made multiple substantive rulings incorporated into an order entered on Thursday, March 31, 2011. The Court took two specific matters under advisement and requested supplemental briefs from the parties. On March 16, 2011, the Plaintiffs filed a Motion for Reconsideration of one the Court's substantive rulings from the March 2, 2011, hearing. For the following reasons, the Court denies the Motion for Reconsideration, sustains the demurrer as to a disparate impact theory underlying Plaintiff Suthanthiran's ECOA claim and to allegations regarding the covenant of good faith and fair dealing under Count V, and overrules the demurrer as to Count IV.

*Facts*

This case arises out of a dispute between Mr. Krishnan Suthanthiran, his four companies, Best Medical Industries, Best Medical International, Gunston Hall Realty, and Huestis Machine Corp. ("Best Medical Businesses"), and Wells Fargo, Inc. ("Wells Fargo") as the successor in interest to Wachovia. The Court has already ruled on the bulk of the demurrer and plea in bar and will consequently focus the remainder of the opinion on the facts and analysis relevant to the issues under advisement.

The consolidated lawsuits in this action consist of two confessed judgments by Wells Fargo against the Best Medical Businesses which this Court stayed following a Motion to Consolidate them with a lawsuit Mr. Suthanthiran and the Best Medical Businesses filed against Wells Fargo. The Plaintiffs' lawsuit alleges multiple causes of action, including violations of the Virginia Equal Credit Opportunity Act ("VA ECOA") by Wells Fargo against all Plaintiffs (Count I) and Breach of Contract regarding the Financing and Security Agreement ("FSA") (Count IV) and the Interest Rate Swap Agreement ("Swap Agreement") (Count V). During oral argument on March 2, 2011, the Court took under advisement whether a claim under the VA ECOA may be grounded in a disparate impact theory and whether the UCC governs the FSA and the Swap Agreement. The Court requested that the parties submit supplemental briefs on these issues.

In support of their claim under Count I, the Plaintiffs allege that Wells Fargo declined to extend and/or renew their lines of credit, ignored Plaintiffs' request for a new loan servicing manager, and ignored Mr. Suthanthiran's overt complaints of race discrimination. They also allege that, through its employee, Mr. Thompson, Wells Fargo demonstrated animosity and hostility to Mr. Suthanthiran by Mr. Thompson's communicating with him in a loud, rude, offensive manner while communicating with non-minorities in a respectful manner. Moreover, the Plaintiffs allegations amount to a claim that Wells Fargo confessed judgment against them as retaliation for Mr. Suthanthiran's filing of a complaint of race discrimination. The Second Amended Complaint also alleges that Mr. Suthanthiran remained creditworthy but was treated differently because he is of Indian descent. When responding to Wells Fargo's demurrer, the Plaintiffs contended that the Best Medical Businesses all bear the ethnicity of Mr. Suthanthiran because they are not publicly traded, but solely owned by him.

*Analysis*

A. *Plaintiffs' Motion for Reconsideration*

In support of their Motion for Reconsideration of the Court's decision to sustain the demurrer to the Best Medical Businesses' claim under the VA

ECOA, the Plaintiffs contend that a corporation can have a race, ethnicity, or national origin, and can therefore be a victim of discrimination in violation of the VA ECOA. Plaintiffs contend that, if the Virginia General Assembly had wanted to exclude corporations from being able to recover under the VA ECOA, it should have changed the definition of "person" to have that effect.

Virginia Code § 6.2-500 *et seq.* contains the provisions of the ECOA. Virginia Code § 6.2-501 prohibits discrimination against "any applicant with respect to any aspect of a credit transaction 1. On the basis of race, color, religion, national origin, sex or marital status, or age, provided the applicant has the capacity to contract. . . ." Va. Code § 6.2-500 defines an "applicant" as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding the previously established credit limit." Although the ECOA itself does not contain a definition of "person," Va. Code § 6.2-100 contains a set of definitions that apply to all sections of Title 6.2 and defines "person" as: "any individual, corporation, partnership, association, cooperative, limited liability company, trust, joint venture, government, political subdivision, or other legal or commercial entity."

When engaging in statutory interpretation, the Court must not give a statute an absurd meaning. It is axiomatic in Virginia law that a corporation is a separate and distinct legal entity from its members, officers, and shareholders. *See Mission Residential, L.L.C. v. Triple Net Properties, L.L.C.*, 275 Va. 157, 161 (2008). *See also Federal Communications Commission v. AT&T, Inc.*, 131 S. Ct. 1177, 1186 (2011) ("We reject the argument that, because 'person' is defined for purposes of FOIA to include a corporation, the phrase 'personal privacy' in Exemption 7(C) reaches corporations as well. The protection in FOIA against disclosure of law enforcement information on the ground that it would constitute an unwarranted invasion of personal privacy does not extend to corporations. We trust that AT&T will not take it personally.") The same is not true for a sole proprietorship,[1] but the Plaintiffs have not alleged that any of the Best Medical Businesses are sole proprietorships. It would be illogical for the Court to assume that the Virginia General Assembly meant to change this longstanding principle of the law on corporations by enacting this definition of "person." Surely the Plaintiffs would not contend that a corporation has a religion, sex, marital status, or age through which it could bring a lawsuit under ECOA for discrimination. Accordingly, the Court finds no merit in Plaintiffs' Motion for Reconsideration and hereby denies the motion.

---

[1] "In contrast to a sole proprietorship, 'a corporation is a legal entity that is completely separate and distinct from its shareholders'." Recalde v. ITT Hartford, 254 Va. 501, 505, n. 4 (1997) (quoting Bogese, Inc. v. State Highway Comm'r, 250 Va. 226, 230 (1995)).

B. *Disparate Impact Theory and the Virginia ECOA*

During oral argument on March 2, 2011, and in briefs on the demurrer and supplemental briefs, Plaintiffs and Wells Fargo dispute whether an individual may pursue a claim under the VA ECOA for discrimination based on a disparate *impact* theory, as opposed to a more traditional disparate *treatment* theory. The Virginia Supreme Court has yet to speak on this issue, and, regardless of the lack of precedent, the Court finds that the Plaintiffs have failed to allege the requisite elements of a claim for disparate impact discrimination.

To prevail on a claim for disparate impact in the employment context, a plaintiff must prove the following elements: (1) the employer is utilizing a facially neutral employment practice; (2) applying it equally to all individuals; (3) the practice affects a particular group more harshly than another; and (4) cannot be justified by a business necessity. *See Strange v. Norfolk & W. Ry.*, 1987 U.S. App. LEXIS 18311, *6 (4th Cir. 1987). Applying this theory to the commercial lending industry, the required elements would be (1) the lender is utilizing a facially neutral lending practice; (2) applying it equally to all applicants; (3) the practice affects a particular applicant group more harshly than another; and (4) cannot be justified by a business necessity.

The Court finds that in their Second Amended Complaint, the Plaintiffs have combined their theories of discrimination, and the allegations that most closely resemble a claim for disparate impact discrimination are the following:

¶ 35(c) Defendant implemented policies, goals, objectives, and directives that were disproportionately hostile to racial and national origin minorities.

¶ 35(d) Defendant implemented policies, goals, objectives, and directives that were disproportionately hostile to geographical areas that had concentrations of racial and national origin minorities. . . .

¶ 35(f) The reasons stated by Defendant for refusing to fairly negotiate loan terms are pretextual and designed to hide or cover up its adverse outcome or impact upon minorities who make loan applications.

Taking these allegations in the light most favorable to the Plaintiffs and drawing all reasonable inferences from them, as the Court must, they fail to satisfy at least the second and fourth elements, if not also the first. The Court may infer that ¶ 35(f) is an allegation that Wells Fargo stated facially neutral reasons for refusing to negotiate particular loan terms with minority applicants. But the Second Amended Complaint contains no allegations

regarding the equal application of this lending practice to all applicants, nor does it contain any allegations regarding business necessity. Moreover, it would be unreasonable for the Court to infer the pleading of these elements from the allegations as pleaded in the Second Amended Complaint. Therefore, the Court sustains the demurrer as to Plaintiffs' disparate impact claim under the Virginia ECOA because the Plaintiffs have failed to allege the necessary elements.

*C. Breach of Contract (Counts IV and V), Applicability of the UCC to the Financing and Security Agreement and the Interest Rate Swap Agreement*

During oral argument on March 2, 2011, Wells Fargo's counsel contended that the UCC did not apply to the FSA and also did not apply to the Swap Agreement. In its supplement brief, Wells Fargo concedes that the UCC applies to the FSA and the promissory notes involved with the Huestis loan transaction but argues that the UCC's applicability does not create an independent cause of action in tort for the breach of the covenant of good faith and fair dealing. The Court finds that the UCC does apply, and, since the Plaintiffs have merely alleged the breach of that covenant as part and parcel of their breach of contract claim, there is no need to respond to Wells Fargo's contention. The Court will overrule the demurrer to Count IV regarding the FSA.

With regard to Count V, the Plaintiffs contend in their supplemental brief that the UCC applies to the Swap Agreement because it is a negotiable instrument. More specifically, the Plaintiffs claim that the Swap Agreement is a negotiable instrument because it contains an unconditional promise or order to pay a fixed amount of money and is payable on demand or at a definite fixed time. The Court disagrees. Virginia's version of the UCC section on negotiable instruments is found in Code § 8.3A-104, which provides:

(a) Except as provided in subsections (c) and (d), *"negotiable instrument"* means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:

(1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;

(2) is payable on demand or at a definite time; and

(3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or

dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

Assuming, *arguendo*, that the Plaintiffs are correct about the Swap Agreement containing an unconditional promise to pay, that is payable on demand or at a definite time, the Swap Agreement is not payable to bearer or order and includes many other undertakings by the Plaintiffs and the other parties to the Swap Agreement. Finding that the Swap Agreement is not a negotiable instrument under Va. Code § 8.3A-104, the Court therefore sustains the demurrer as to any allegations in Count V regarding the covenant of good faith and fair dealing but will overrule the demurrer to Count V on all other grounds.

June 8, 2011

This matter came before the Court on the Defendant's Demurrer to Plaintiffs' Third Amended Complaint. The Court heard argument on Thursday, May 5, 2011, and made multiple substantive rulings, incorporated into an order entered on May 24, 2011. The Court took three specific matters under advisement and requested supplemental briefs from the parties. For the following reasons, the Court declines to rule on Wells Fargo's liability for intentional torts proven against Wachovia and sustains the demurrer as to rescission as a remedy under the UCC and as to the minority business certification providing standing for corporate plaintiffs under the Virginia Equal Credit Opportunity Act ("VA ECOA").

*Facts*

As this case has been before the Court now on multiple occasions, the Court will dispense with an extensive factual overview and focus only on the facts relevant to the legal issues in this opinion. Consistent with its April 27, 2011, opinion letter, the Court devoted significant time during the May 5, 2011, hearing to issues discussed in that letter. When discussing the ability of the corporate plaintiffs to bring a claim under the VA ECOA, the Court asked counsel for Wells Fargo whether the certification of some of the corporate plaintiffs as minority-owned businesses had any effect on their ability to bring such a claim. Counsel for Wells Fargo responded that she did not believe that the certification had any effect on standing, but she had not looked into the issue. The Court requested and received supplemental briefs from both parties on this issue.

During the same dialogue about claims under the VA ECOA, the Court also asked counsel for Wells Fargo whether Wells Fargo would be liable for the intentional torts of Wachovia as Wachovia's successor. Counsel for Wells Fargo responded that she thought Wells Fargo might be liable,

but she wanted to look back at the agreements memorializing the merger between the two corporations before giving the Court a definite answer. The Court asked counsel to address that issue as well in a supplemental brief. Wells Fargo's supplemental brief reserves its position that neither it nor Wachovia committed any intentional torts against the Plaintiffs, and asserts that, were the Court to find that any were committed, Wells Fargo did not intend to raise the merger as a defense.

Lastly, Wells Fargo's demurrer raised multiple issues about the Plaintiffs' requested remedies. During the hearing, the Court asked the parties whether rescission was an appropriate remedy under Virginia's version of the Uniform Commercial Code ("UCC") for a breach of the covenant of good faith and fair dealing. As the parties' briefs had not focused specifically on this issue, the Court requested written argument on that and limited the parties to a total of ten pages for these three issues.

*Analysis*

A. *Rescission as a Remedy under the UCC*

In their Third Amended Complaint, the Plaintiffs request rescission of the Waiver and Amendment Agreement as a remedy for their claim that Wells Fargo breached the covenant of good faith and fair dealing incorporated into the Financing and Security Agreement ("FSA") with Plaintiff Huestis Machine Corp.

In its supplemental brief, Wells Fargo contends that, although rescission is available in limited circumstances under the UCC, those circumstances are not present in this case; therefore, rescission is not available to the Plaintiffs. Wells Fargo emphasizes that courts have repeatedly held that rescission is not an appropriate remedy for a breach of contract claim because it is so extreme as compared to other available remedies for contract disputes, i.e. money damages, or even reformation. Additionally, Wells Fargo points out that the Plaintiffs' particular request goes a step further beyond the cases in which courts have granted rescission; the Plaintiffs ask the Court to rescind the Waiver and Amendment Agreement as a remedy for Wells Fargo's alleged breach of the Financing and Security Agreement.

In their supplemental brief, the Plaintiffs urge the Court to follow a Fourth Circuit decision which granted rescission for a defendant's violation of a contract's duty of good faith and fair dealing. *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933 (4th Cir. 1999). And looking to Virginia's version of the UCC, the Plaintiffs argue that Va. Code § 8.1A-103(b) gives courts the discretion to apply common law remedies where the UCC is silent and application of that remedy would achieve the ends of justice. That section states: "Unless displaced by the particular provisions of the UCC, the principles of law and equity . . . supplement its provisions." *Id.*

Wells Fargo is correct that the UCC specifically allows for rescission in certain instances not relevant to this case, such as a buyer's right to cancel a contract for the sale of goods and rescission of a lease contract. The Plaintiffs are also correct that the Virginia Code allows the Court to use its discretion in supplementing the UCC's specific provisions with the principles of law and equity. Turning to the case law for these principles, the Court finds that, in the absence of mutual mistake, illegality, disability, fraud by concealment or in the inducement, and without undue influence resulting from confidence or friendship, or any inadequacy of consideration sufficient to suggest fraud, equity does not require rescission, but leaves a plaintiff to his legal remedies. *See Rison v. Newberry*, 90 Va. 513, 521-22, 18 S.E. 916 (1894). Moreover, "[o]rdinarily, rescission will not be granted for breach of a contract which is not of such substantial character as to defeat the object of the parties in making the contract." *Neale v. Jones*, 232 Va. 203, 349 S.E.2d 116 (1986).

Assuming *arguendo* that the Plaintiffs were requesting rescission of the FSA as a remedy for its alleged breach by Wells Fargo, the one supportive case that the Plaintiffs cite involves South Carolina law, not Virginia law. The Supreme Court of Virginia has consistently held that only certain grounds such as mutual mistake, fraud, and duress are appropriate for rescission. *See Ayers v. Mosby*, 256 Va. 228, 234, 504 S.E.2d 845 (1998); *Runion v. Helvestine*, 256 Va. 1, 10, 501 S.E.2d 411 (1998); *Metro Realty of Tidewater, Inc. v. Woolard*, 223 Va. 92, 99, 286 S.E.2d 197 (1982); *Ashby v. Dumouchelle*, 185 Va. 724, 733, 40 S.E.2d 493 (1946). The Plaintiffs have failed to allege anything but the breach of the covenant of good faith and fair dealing, and Virginia law does not recognize that as a proper ground for rescission.

Most importantly, however, the Plaintiffs are requesting that the Court allow them to proceed on a theory that the breach of the covenant of good faith and fair dealing encompassed in one agreement serves as grounds for rescission of another. The Court cannot find any supporting case law for this theory, and, because rescission is such an extreme remedy in any case, the Court declines to embrace the Plaintiffs' theory as alleged in the Third Amended Complaint. Accordingly, the Court sustains Wells Fargo's demurrer to the requested rescission of the Waiver and Amendment Agreement based on a breach of the covenant of good faith and fair dealing implied in the Financing and Security Agreement. This decision requires the Plaintiffs to strike Section G of Count VII's prayer for relief.

B. *Minority-Owned Business Certification and Corporate Standing under the VA ECOA*

In their supplemental brief, the Plaintiffs claim that neither the relevant statutes nor any case law precludes a corporate plaintiff from

bringing an ECOA claim on its own behalf. The Plaintiffs analogize to cases brought by corporations under federal civil rights law and urge the Court to adopt a similar theory for ECOA claims.

In its supplemental brief, Wells Fargo argues that former Governor Timothy Kaine established the minority-owned business certification through an Executive Order in 2006, with the asserted purpose of "maximiz[ing] the participation of its citizens in the vast array of commercial opportunities in state procurement . . . to promote economic justice and eliminate impediments to a more equitable procurement process." Exec. Order No. 33, Aug. 10, 2006. Wells Fargo also cites to the Virginia Administrative Code implementing this Executive Order and emphasizes that this certification designates a business as "minority-owned" as opposed to the business itself being a minority; and that the purpose of the certification is to even the playing field in state government contracting as opposed to creating a new opportunity for the Plaintiffs under the ECOA.

What is today known as the Department of Minority Business Enterprise (DMBE) was originally enacted in 1975 by Chapter 509 of the Acts of the Virginia General Assembly and is now codified at Va. Code § 2.2-1400 *et seq*. The terminology used in this title of the code has changed multiple times since 1975 by formal amendment and executive order, but the intent behind the creation of the DMBE and the certification has always been the same, to "[c]oordinate . . . the plans, programs, and operations of the state government that affect or may contribute to the establishment, preservation, and strengthening of small, women-owned, and minority-owned businesses." Va. Code § 2.2-1402(1). Wells Fargo is correct that former Governor Kaine's Executive Order makes clear that the narrow purpose of the certification is to increase opportunities for minority-owned businesses in the Commonwealth's procurement processes. Nothing in the multiple amendments or executive orders regarding this certification indicates any intent by the General Assembly to affect the borrower-lender relationship between parties like the ones in this case. Therefore, the Court finds that the minority-owned business certification two of the corporate Plaintiffs hold does not create standing for them under the VA ECOA.